## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

DANIEL S. LEVIE,                                    )
                                  Plaintiff,        )
v.                                                  )        Case No. CIV-05-1419-HE
                                                    )
RON WARD, Director; DEBBIE MORTON,                  )
Director's Designee; WARDEN LENORA                  )
JORDAN; UNNAMED WICCAN                              )
REPRESENTATIVE; DEPUTY WARDEN                       )
PHILLIP BRANDON; and DANNY                          )
ATCHLEY, APO,                                       )
                                                    )
                                  Defendants.       )

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se*, brings this action pursuant to 42 U.S.C.

§ 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C.

§ 2000cc-1 *et seq*., alleging violations of his federal constitutional rights.  This matter has

been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).

Defendant Danny Atchley has filed a Motion to Dismiss/Motion for Summary Judgment and

Brief in Support [Doc. #20].  Defendants Ron Ward, Debbie Morton, Lenora Jordan and

Phillip Brandon have separately filed a Motion to Dismiss/Motion for Summary Judgment

and Brief in Support [Doc. #41]. Plaintiff has responded to both motions [Doc. ##28-29, 47-

49].  In addition, the Court has received a Special Report from the Oklahoma Department of

Corrections [Doc. # 21].  For the reasons set forth below, it is recommended that Defendants'

Motions be granted in part and denied in part.

## I.   <u>Plaintiff's Claims</u>

Plaintiff is in the custody of the Oklahoma Department of Corrections (ODOC) and incarcerated at Oklahoma State Reformatory (OSR). Plaintiff identifies his religion as Wiccan. *See* Special Report, Attachment 1, Consolidated Record Card.[1]  Plaintiff claims his First Amendment right to the free exercise of religion has been violated and seeks relief pursuant to 42 U.S.C. § 1983.   He also brings a statutory claim for violation of his free exercise rights pursuant to Section 3 of RLUIPA, 42 U.S.C. § 2001cc-1(a)(1)-(2).

In Counts 1 and 2 of the Complaint, Plaintiff claims he is not able to exercise his religion in daily ritual practice as a solitary Wiccan for two reasons.  First, prison officials have limited the types of prayer oils he is permitted to use.  Plaintiff contends that Wiccan religious practice requires specific oils to be used for specific prayers and that the limitation on the approved oils that inmates may purchase and use denies him the ability to practice specific prayers.  Second, prison officials have prohibited him from possessing prayer oils, herbs and incense in his cell.  Plaintiff contends that as a solitary Wiccan he needs these religious items in his cell and that limiting their use to communal areas of the prison denies him the opportunity to worship daily in a private manner consistent with his religious beliefs. In Count 3, Plaintiff challenges the constitutionality of ODOC OP-030112 governing "Religious Programs" on the grounds that it (1) prohibits personal (in-cell) possession of oils, herbs and incense; (2) prohibits the purchase of "types of oils that exceed the four 'approved'

---

[1]ODOC policies recognize Wicca as a religious faith and expressly permit activities and access to items relating to the Wiccan faith.  *See e.g.*, Special Report, Attachment 4 at 16-21.

scents (plus unscented olive oil)"; and (3) contains specifications that restrict Plaintiff's ability to purchase and possess "other religious Wiccan ritual accouterments such as a pentacle, chalice, bell and wand."

Plaintiff names as Defendants Ron Ward, former Director of the Oklahoma Department of Corrections (ODOC),[2] Debbie Morton, the Director's Designee, Lenora Jordan, Warden of OSR, Deputy Warden Brandon and Danny Atchley, acting chaplain at OSR during the times relevant to Plaintiff's claims. Plaintiff also identifies as a Defendant the Unnamed Wiccan Representative on the ODOC Interfaith Council. Plaintiff sues these Defendants in both their individual and official capacities.

As relief, Plaintiff seeks nominal, compensatory and punitive damages. He also seeks declaratory relief declaring OP-030112 unconstitutional on grounds that it prohibits the free exercise of the Wiccan religion, and he seeks injunctive relief prohibiting Defendants from future constitutional violations against Plaintiff's Wiccan beliefs and practices.

Defendants Ward, Morton, Jordan and Brandon (ODOC Defendants) seek summary judgment on the merits of Plaintiff's First Amendment and RLUIPA claims. They also raise defenses of failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a), lack of personal participation in the alleged violation of Plaintiff's federal constitutional and statutory rights, Eleventh Amendment immunity and qualified immunity. Defendant Atchley separately moves for summary judgment on the ground that Plaintiff has failed to exhaust

---

[2]Since the filing of this action, Justin Jones has replaced Ron Ward as Director of the ODOC.

3

administrative remedies.  Defendant Atchley also seeks summary judgment on the merits of

Plaintiff's First Amendment claim and raises similar defenses of lack of personal

participation, qualified immunity and Eleventh Amendment immunity.  Defendant Atchley

does not address the merits of Plaintiff's RLUIPA claim, but instead seeks dismissal on

grounds that RLUIPA does not provide a private right of action for monetary damages

against state actors sued in their individual capacities.  He also seeks dismissal of Plaintiff's

claims for injunctive relief on grounds of lack of subject matter jurisdiction, contending that

he is not the official within ODOC having authority to effect any injunctive relief granted by

the Court.

## II.   <u>Procedural History</u>

A Report and Recommendation [Doc. #50] was filed in this action on January 17,

2007, recommending that  Defendants' motions to dismiss [Doc. ##20 and 41] be granted

pursuant to Fed. R. Civ. P. 12(b)(6) and the Complaint be dismissed without prejudice to

refiling on the ground that Plaintiff had not satisfied the exhaustion requirement of 42 U.S.C.

§ 1997e(a) as to all claims raised in the Complaint.  The Court determined that Plaintiff had

not exhausted his administrative remedies for one of the claims included in Count 3 of the

Complaint -- the claim challenging OP-030112's required specifications governing inmates'

other religious accouterments (such as a bell, chalice and wand).  Because the Complaint

contained an unexhausted claim, dismissal of the entire Complaint was recommended

pursuant to the Tenth Circuit's total exhaustion rule.  *See Ross v. County of Bernalillo*, 365

F.3d 1181 (10th Cir. 2004).   Fifteen days following the filing of the Report and

Recommendation, the United States Supreme Court held in *Jones v. Bock*, 127 S.Ct. 910 (2007), that total exhaustion is not required by 42 U.S.C. § 1997e(a).

In light of *Jones*, the District Judge re-referred the matter without addressing the findings contained in the Report and Recommendation with respect to exhaustion of administrative remedies. *See* Order [Doc. #52]. Pursuant to *Jones*, where, as here, the Complaint includes an unexhausted claim, only the unexhausted claim should be dismissed for failure to satisfy § 1997e(a)'s exhaustion requirement. *Jones*, 127 S.Ct. at 925-926. For the reasons previously set forth in the Report and Recommendation [Doc. #50] filed January 17, 2007, the claim included in Count 3 of the Complaint challenging OP-030112's specifications restricting Plaintiff's ability to purchase and possess other religious accouterments (such as a bell, chalice and wand) should be dismissed without prejudice to refiling for failure to exhaust administrative remedies. The remaining claims, however, must be addressed on the merits.

## III.   The Policies At Issue and Their Application to Plaintiff's Religious Practices

The ODOC policy underlying Plaintiff's claims is OP-030112. The policy includes a list of "allowable items" for communal use but restricts access to the items. *See* Special Report, Attachment 4 at 16. Most pertinent to Plaintiff's claims is that portion of the policy restricting a prisoner's access to perfumes, oils and incense. The policy allows for "1 [s]mall bottle/vial owned by inmate, only to be used during religious services and stored in designated area for worship and storage. May not be stored in inmate cell or living area." OP-030112 does not identify the permitted types of oils but states: "Fragrances must be

5

approved by the facility Chaplain or religious services coordinator. (Islam, Wicca, Christian)." *See* Special Report, Attachment 4 at 17.[3]

In March 2005, Tim Wilkins, Chaplain at OSR, submitted a memorandum to the general prison population through Defendants Jordan, Brandon and Atchley, among other prison officials, regarding a "[p]olicy clarification for inmate use and storage of religious oils, incense and other items." The memorandum states that to come into complete compliance with ODOC OP-030112, "there will be no incense, herbs or oils taken to cells by any inmates." *See* Special Report, Attachment 3 at 1.[4] Defendants Jordan, Brandon and Atchley each initialed the memorandum. *Id.*

Prior to that time, Defendant Atchley served as Chaplain at OSR. Plaintiff was given "a small amount of prayer oil each Friday" and "[o]n several occasions Plaintiff was allowed to come to the chapel during the week to replenish his supplies." *See* Special Report, Attachment 2, Atchley Affidavit, ¶ 5. The parties do not identify the types of oils Plaintiff was permitted to use during this time period. However, a memorandum from the "Office of the Chaplain" (and which Plaintiff claims was prepared by Defendant Atchley) states that prior to "a specification limiting oils to five specific oils, inmate Levie had a wider

---

[3]Plaintiff does not specifically challenge the policy's limitation allowing an inmate to own only one bottle or vial. Neither party has focused on this limitation in their pleadings. Rather, Plaintiff's requests for relief are directed at OSR prison officials' decision to limit the types of oils that may be purchased by inmates for religious practices and the ODOC policy prohibiting in-cell possession of religious oils.

[4]Although OP-030112 had been in effect prior to this time, it apparently had not been enforced at OSR.

assortment of oils and incense that he purchased for use in his religious practice." *See* Plaintiff's Objection [Doc. #29], Attachment 8 at 2.  The memo from the chaplain's office further explains:  "My history with Inmate Levie has been amicable.  He has been consistent and intelligible in his request [for additional oils].  Since the catalogs and types of oil have been limited inmate Levie's choices have been restrict[ed] to the extent that the current guidelines prevent him from practicing certain tenants [sic] of his faith."  *Id.*

Defendants state that following the issuance of the March 2005 memorandum and since April 2005, Plaintiff remains authorized to purchase five oils for religious use – frankincense, sandalwood, Egyptian musk, olive oil and cedar.  *See* Defendant Atchley's Motion [Doc. #20] at 15-16.  In response to a grievance submitted by Plaintiff, the Interfaith Council determined these five oils "would be appropriate for use by all faith groups."  *See* Special Report, Attachment 5, Affidavit of Tim Wilkins ("Wilkins Affidavit"), ¶ 9.  *See also* Special Report, Attachment 6 at 6-7.  According to Defendant Atchley, the Wiccan Representative of the Interfaith Council consulted with the elders of her community and determined that the five approved oils are acceptable for Wiccan practices and "no others are needed."  *See* Special Report, Attachment 6 at 5.

Plaintiff's description of his Wiccan practices indicates that of the five oils authorized by OSR officials, only sandalwood oil is used.  *See* Special Report, Attachment 6 at 4. Plaintiff claims additional oils (sixteen as identified in a Request to Staff, *see* Special Report,

Attachment 6 at 4) are used for various practices as part of his Wiccan faith.[5]  Plaintiff

identifies oils to be used on certain holy days and additional oils to be used for each day of

the week for different prayers or spells.[6]  Other oils are also identified for various purposes.

*See id.*  Plaintiff describes the use of oils as follows:

> Each of the Sabbat and Esbat rites are observed with ritual, including the use
> of incense and essential oils to attune the Wiccan to Deities being invoked.
> Prior to the rite, all tools must be consecrated by fumigation and anointing
> with oil.  It should be apparent that limiting the approved oils is tantamount to
> restricting the Wiccan to certain types of prayer (or only allowing him to pray
> "approved" prayers).  If the oil's scent does not correspond to the need being
> prayed for, the ritual is rendered ineffective, and therefor[e] pointless.

*See* Special Report, Attachment 6 at 2.

In further support of his claim that additional oils are necessary, Plaintiff attaches the

affidavit of a prisoner who is Wiccan.  *See* Plaintiff's Objection [Doc. #29], Attachment 10,

Affidavit of Winn Corbett ("As a solitary Wiccan I believe it is an absolute must to possess

the right corresponding oils, incense and herbs in order for ones [sic] prayer to be effective.

This is a very traditional belief among all Wiccans . . . .").  According to Plaintiff, the oils

---

[5] Plaintiff does not seek permission to have possession of all 17 oils simultaneously.  *See*
Plaintiff's Objection [Doc. #29] at 26 ("Plaintiff does not 'disregard resources necessary to
accommodate his request' nor is Plaintiff requesting 16 different kinds of oils, herbs and incense to
be stored by the Defendant.  Plaintiff has never asked such consideration.  Defendants have not
submitted any proof that Plaintiff requested to possess 16 kinds of oils, herbs, and incense
simultaneously.").

[6] Plaintiff uses the word "prayers" in both his administrative filings and court pleadings and
further explains that the oils are used for the casting of spells.  *See, e.g.,* Special Report, Attachment
6 at 4 ("Where I have used the word 'prayer' it is to be understood as spell . . . ."); *see also*
Plaintiff's Objection [Doc. #29], Attachment 1 at 11 ("Wiccans practice magic in their religious
rites.  When I have written 'prayer' it should be understood as 'spells' because the Wiccan version
of prayer is to cast a spell.").

8

can be purchased in "preformulated blends" from AzureGreen, an approved vendor.  *See* Special Report, Attachment 6 at 3.

Plaintiff contends that Defendants have offered no valid rationale for limiting his purchase of oils to the five types identified.  Further Plaintiff contends that Defendants' stated rationale for prohibiting in-cell possession of religious oils is insufficient to justify their restrictive policy.  As noted, Plaintiff challenges Defendants' conduct under § 1983 as violative of his First Amendment rights, and Plaintiff also separately challenges Defendants' conduct under RLUIPA.

## IV. **Summary Judgment Standard**

A motion for summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  An issue of material fact is genuine only if a party presents facts sufficient to show that a reasonable jury could find in favor of the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The existence of a factual issue does not preclude summary judgment where there is no evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable juror could find for the other side.  *True v. United States*, 190 F.3d 1165, 1177 (10th Cir. 1999).  In opposing a motion for summary judgment, the non-moving party must come forward with enough evidence  to support a jury verdict.

9

Conclusory allegations will not suffice.  *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

## V.    Analysis

### A.    Eleventh Amendment Sovereign Immunity

Defendant Atchley and the ODOC Defendants seek dismissal of Plaintiff's official capacity claims for monetary damages brought pursuant to 42 U.S.C. § 1983 on the ground that those claims are barred by the Eleventh Amendment.   The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State. . . ." U.S. Const. amend. XI. This Amendment precludes not only actions in which the state is directly named as a party, but also actions brought against a state agency or state officer where the action is essentially one for recovery of money from the state treasury. *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (barring any "retroactive award which requires the payment of funds from the state treasury" and limiting the federal courts to providing only "prospective injunctive relief" against state officials sued in their official capacity).

The State of Oklahoma has not waived the defense of sovereign immunity as to claims brought pursuant to § 1983.  *See Callahan v. Poppell*, 471 F.3d 1155, 1158-1159 (10th Cir. 2006).  Therefore, Plaintiff's § 1983 claims for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment.

10

It does not appear Defendants have raised the defense of sovereign immunity with respect to Plaintiff's RLUIPA claims.   Notably, a split in circuit authority has developed as to whether RLUIPA waives a state's Eleventh Amendment immunity.  *Compare Lovelace v. Lee*, 472 F.3d 174, 192 (4th Cir. 2006) ("[O]ur court holds that a state's Eleventh Amendment immunity from suit for damages is not waived in RLUIPA.") *with Benning v. Georgia*, 391 F.3d 1299, 1305 (11th Cir. 2004) ("Congress unambiguously required states to waive their sovereign immunity from suits filed by prisoners to enforce RLUIPA.") *rehearing en banc denied*, 129 Fed. Appx. 603 (11th Cir. 2005).  The Tenth Circuit Court of Appeals has not yet decided the issue.  Because Defendants cite only case law addressing sovereign immunity in the context of claims brought pursuant to § 1983, the Court declines to address the issue in the context of RLUIPA.[7]

---

[7]Based on the allegations of the Complaint, Plaintiff brings his RLUIPA claims directly and not pursuant to 42 U.S.C. § 1983.  Therefore, whether Eleventh Amendment immunity would also operate to bar his RLUIPA claims is deemed a separate issue.  Moreover, to the extent RLUIPA creates its own remedial scheme, Plaintiff would be foreclosed from using § 1983 as a means to redress his RLUIPA claims.  *See City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113 (2005) (where Congress creates a specific statutory remedy, it usually does so to the exclusion of § 1983). *See also Christian Methodist Episcopal Church v. Montgomery*, No. 4:04-CV-22322-RBH, 2007 WL 172496 (D. S.C. Jan. 18, 2007) (unpublished op.) (dismissing RLUIPA claim brought pursuant to § 1983 claim and finding that RLUIPA claim does not lie under § 1983 because RLUIPA has it own remedial relief for a violation); *Chase v. City of Portsmouth*, No. CIV.A. 2:05CV446, 2005 WL 3079065 at *5 (E.D. Va. Nov. 16, 2005) (unpublished op.) (finding Plaintiff could not use § 1983 as a vehicle for bringing a RLUIPA claim because RLUIPA has its own remedial scheme).

B.     **Plaintiff's First Amendment Claims**

In *Turner v. Safley*, 482 U.S. 78 (1987), the United States Supreme Court recognized that imprisonment does not automatically deprive a prisoner of important First Amendment and other constitutional rights.  *Id.* at 93.  Nonetheless, greater restriction of those rights is constitutionally permissible in the prison context than elsewhere.  And, courts owe "substantial deference to the professional judgment of prison administrators."  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).  Thus, where "difficult and sensitive matters of institutional administration" are at issue, "even where claims are made under the First Amendment" courts must not substitute their judgment for that of prison officials.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987).  In light of these considerations, "restrictive prison regulations are permissible if they are reasonably related to legitimate penological interests and are not an exaggerated response to such objectives."  *Beard v. Banks*, 126 S.Ct. 2572, 2578 (2006) (internal quotations and citations omitted).

In determining the reasonableness of the regulation at issue, four factors govern the analysis:  First, is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it?  Second, are there alternative means of exercising the right that remain open to the prison inmates?  Third, what impact will accommodation of the asserted constitutional right have on guards and other inmates, and on the allocation of prison resources generally?  And, fourth, are ready alternatives available for furthering the governmental interest available?  *Beard*, 126 S.Ct. at 2578 (internal quotations, alterations and citations omitted).  These factors were first identified by

12

the Supreme Court in *Turner,* and, therefore, are commonly referred to as the *Turner* factors. *See also O'Lone*, 482 U.S. at 350-353.[8]

Where, as here, the Court reviews the *Turner* factors in the context of a motion for summary judgment, the Court must determine whether defendants, as movants, have demonstrated the absence of a genuine issue of material fact and entitlement to judgment in their favor as a matter of law. *Beard*, 126 S.Ct. at 2578 (*citing* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The prisoner then bears the burden of persuasion to set forth specific facts demonstrating a genuine issue of material fact for trial. *Id.* While all "justifiable inferences" must be drawn in favor of the prisoner, the court must "distinguish between evidence of disputed facts and disputed matters of professional judgment." *Id.* As to the latter, the court's inferences "must accord deference to the views of prison authorities." *Id.* (*citing Overton*, at 132).

---

[8]In a recent case, the Tenth Circuit Court of Appeals notes, *in* dicta, that some courts have recognized the possible implications of another Supreme Court case, *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), on assessing the constitutionality of prison regulations that impinge on prisoners' free exercise rights. *See Boles v. Neet*, ___ F.3d ___, 2007 WL 1502265 at *3 (10th Cir. May 24, 2007) (for publication) (observing that under *Smith* the free exercise clause does not exempt an individual from complying with a "valid and neutral law of general applicability" even if that law impinges on that individual's religious practices). The Court in *Boles* notes that the Tenth Circuit Court of Appeals has not yet addressed the issue squarely, but "like our sister circuits we have continued to employ the *Turner/O'Lone* balancing framework in prison cases even after *Smith*." *Id.*

### 1.      __Sincerity of Plaintiff's Religious Beliefs__

Before addressing the *Turner* factors, the Court must first determine, as a threshold matter, whether Plaintiff's beliefs are "sincerely held" and "religious in nature." *Searles v. Dechant*, 393 F.3d 1126, 1131 (10th Cir. 2004). The two beliefs at issue in this case involve Plaintiff's practice as a solitary Wiccan (which explains his request for in-cell possession of religious items) and Plaintiff's assertion that additional oils are essential to his practice of praying and casting spells. Plaintiff asserts these are sincerely held religious beliefs.

The record demonstrates that for several years prior to bringing this lawsuit, Plaintiff practiced his religion as a solitary Wiccan and was permitted to use oils in his cell as part of the exercise of his religion. In addition, Plaintiff's grievance record and the pleadings filed in this action support the sincerity of his beliefs. Whether Plaintiff's beliefs are central or core tenets of the Wiccan religion is not dispositive. *See Searles*, 393 F.3d at 1131 n. 6 (Jewish prisoner demonstrated sufficient evidence that fear of contamination of aroma ingestion of non-kosher food was a sincerely held belief; fact that belief did not constitute central or core tenet of faith did not subject belief to less protection than other religious beliefs) (*citing Hernandez v. Com'r of Internal Revenue*, 490 U.S. 680, 699 (1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.")). *See also LaFevers v. Saffle,* 936 F.2d 1117, 1119 (10th Cir.1991) ( prisoner's belief in religious dietary practices is constitutionally protected if the belief is "genuine and sincere," even if such dietary practices are not doctrinally "required" by the prisoner's religion).

14

Defendants do not challenge the sincerity of Plaintiff's religious beliefs relating to the need for a variety of oils.  But Defendants do suggest that since March 2005, Plaintiff has been participating in communal services with other Wiccans and that this demonstrates he is not a solitary practitioner.  *See* Special Report, Attachment 5, Wilkins Affidavit, ¶¶ 11-12, 27-28.  At best, a question of fact exists on this point.  Plaintiff claims that he practiced on a solitary basis until in-cell possession of oils was disallowed.  Defendants concede that "[p]rior to the formation of the group in 2005, from 2001 to 2004, Plaintiff could have correctly made the claim to be a solitary due to not having an organized Wiccan group at OSR."  *Id.*, ¶ 12.  However, Defendants claim Plaintiff was permitted in-cell possession of oils during a time when communal services could not be offered.  *See* Special Report, Attachment 2, Atchley Affidavit, ¶ 5. Whether Plaintiff is a group practitioner previously forced to practice as a solitary, or whether he is a solitary now forced to participate in group practice is not capable of resolution on the present record.  Moreover, Plaintiff submits sufficient evidence to demonstrate that his involvement in communal service does not negate his status as a solitary practitioner.  *See, e.g.*, Plaintiff's Objection [Doc. #29], Attachment 5 at 3 and 6.  Construing the evidence in the light most favorable to Plaintiff, then, Defendants have failed to establish as a matter of law that Plaintiff's solitary practice is not a sincerely held religious belief.

2. **Turner Factors**

a. **First Turner Factor: Is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it?**

To satisfy the first *Turner* factor, prison officials are "required to make a minimal showing that a rational relationship exists between [their] policy and stated goals." *Beerheide v. Suthers*, 286 F.3d 1179, 1186 (10th Cir. 2002).[9]

Defendants explain that their prohibition of in-cell possession of oils, herbs and incense is based on prison security concerns. Specifically, Defendants submit the affidavit of Ken Klingler, a veteran prison official with the ODOC. Klingler states that the oils mask the scent of drugs, making it difficult for drug dogs to detect the presence of drugs; prisoners can use the empty vials to hide drugs on their bodies; oils can be used by prisoners for prohibited sexual activities; oils can be used to thwart security if prisoners rub oils on their bodies or put oils on the floors of their cells; and finally, oils create bartering concerns that pose additional threats to security. *See* Defendant Atchley's Motion [Doc. #20], Exhibit 1, Affidavit of Ken Klingler, ¶¶ 3-12; *see also* Defendants' Motion [Doc. # 41], Exhibit 3 (same).

---

[9]The Tenth Circuit has described the first *Turner* factor to be more of an "element" than a "factor" in the sense that it "is not simply a consideration to be weighed but rather an essential requirement." *Boles v. Neet*, ___ F.3d ___, 2007 WL 1502265 at *3 (10th Cir. May 24, 2007) (for publication) (*citing Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006)).

Plaintiff responds that while testing has been performed with drug dogs, the particular oils he wishes to use have not been tested.  The record demonstrates that some time prior to 2001, the ODOC determined certain religious oils did mask the scent of drugs and interfere with the ability of drug dogs to detect the presence of drugs.  *See* Defendant Atchley's Reply [Doc. # 37], Exhibit 1, Affidavit of Ronald A. Anderson, ¶¶ 2-3.  After Plaintiff filed this lawsuit, additional tests were conducted on the religious oils currently approved for use by inmates.  *See* ODOC Defendants' Motion [Doc. #41], Exhibit 4, Affidavit of Corey Paul, ¶ 3.  Although these tests were performed after the filing of Plaintiff's lawsuit, the record contains evidence that other religious oils had been tested several years prior.  *See id.*, Exhibit 1, Affidavit of Ron Anderson, ¶ 3.  It is undisputed in the record before the Court that no tests have been performed on the additional sixteen scents Plaintiff seeks permission to use. Nonetheless, Plaintiff fails to demonstrate a genuine issue of material fact.  The fact that other oils have been found to inhibit drug detection is sufficient to demonstrate a rational connection to legitimate penological interest based upon the professional judgment of prison officials.  *Compare Hammons v. Saffle*, 348 F.3d 1250, 1254 (10th Cir. 2003) (fact that drug dog tests were not conducted on Muslim prayer oils used by prisoner did not preclude finding that ODOC's ban on in-cell possession of oils due to masking of scent of drugs was rationally related to a legitimate penological interest).

Plaintiff argues that Defendants can point to no instance where oils have, in fact, been used by prisoners to mask the scent of drugs.  However, "the mere lack of incident . . . does not establish that such an incident would not occur in the future."  *Hammons*, 348 F.3d at

1257.  Under the *Turner* analysis, the Court must defer to the judgment of prison officials that such an incident could occur.  *See Wardell v. Duncan*, 470 F.3d 954, 961 (10th Cir. 2006) ("[Defendants] supported their case with evidence of professional judgment which is entitled to deference and which Plaintiff has failed effectively to challenge.").

Plaintiff provides a list of canteen items that prisoners are allowed to possess in their cells, many of which would create the same concerns as the oils with respect to prohibited sexual activity and efforts to thwart security.  Plaintiff demonstrates that baby oil was sold openly to the general inmate population through the commissary until after the filing of this lawsuit.  *See* Plaintiff's Objection [Doc. #29], Attachment 7, ODOC Memorandum dated March 31, 2006 ("Per Warden Eric R. Franklin, the OSR Canteen will no longer offer for sale baby oil or air freshener.").  As this particular security concern is one of several penological interests advanced by Defendants, this evidence is not sufficient to satisfy Plaintiff's burden of persuasion that a genuine issue of material fact exists.

Plaintiff also claims that air freshener was openly sold to the general inmate population until after this lawsuit was filed.  Plaintiff claims this fact negates Defendants' evidence that the concern over masking the scent of drugs is a valid penological interest justifying prohibition of in-cell possession of oils, herbs and incense. There is no evidence in the record, however, that air freshener masks the scent of drugs, creates bartering concerns or otherwise thwarts security at the prison  Therefore, this evidence fails to create a genuine issue of material fact.

In sum, based on the evidence in the record before the Court, Defendants have made the required showing that there is a valid, rational connection between their prohibition of in-cell possession of religious oils and the legitimate penological interest of prison security.

With respect to Plaintiff's challenge to the policy restricting inmate purchases of religious oils to five approved scents, Defendants have likewise demonstrated a rational connection between the policy and their goals. Defendants' justification for limiting the oils is administrative cost and the increased demands upon prison staff that would negatively impact staff's ability to maintain security. OP-030112 ¶ VIII(E)(4) provides that items such as the oils that are "authorized for use, but not for possession in the cell by an inmate" must be inventoried and further provides that "[t]he facility chaplain / community activities coordinator will maintain a log of the stored personal items . . . ." *See* Special Report, Attachment 4 at 12-13, OP-030112 ¶ VIII(E)(4). The increased administrative tasks associated with allowing multiple scents to multiple faith groups supports the prison officials' exercise of judgment in limiting the available oils to five scents and applying that policy to all faith groups.

Defendants' evidence meets the required "minimal showing" that a rational connection exists between the prison's policies and its legitimate interests in prison security and efficient prison management, and Plaintiff's evidence does not significantly undermine that showing. *See Wardell*, 470 F.3d at 960 (defendants' affidavit was sufficient to establish on summary judgment that regulations served valid penological interest identified by prison

defendants).  In regard to both challenged prison restrictions, therefore, the first *Turner* factor

weighs in Defendants' favor in the context of the pending summary judgment motions.

> **b.**     **Second Turner Factor: Are there alternative means of exercising the right that remain open to prison inmates?**

Where alternative means of exercising a right remain open, "the mere diminishment,

as opposed to complete denial, of [a prisoner's] spiritual experience is relevant in

determining whether the proffered penological interests suffice to justify the infringement."

*Hammons*, 348 F.3d 1250.  Defendants state that Plaintiff can use the five specified oils and

the herbs and incense in the chapel upon request.   *See* Special Report, Attachment 5,

Affidavit of Tim Wilkins, ¶ 5.  In addition, Plaintiff is allowed the following items in his cell:

altar cloth, bell, candles (battery operated), chalice, medicine bag, sea salt and tarot cards.

*See* Special Report, Attachment 4, OP-030112, Attachment B.  *See also* Wilkins Affidavit,

¶ 24.   Plaintiff is also given the opportunity to engage in Wiccan communal group

meditation, meetings and rituals.  *See* Wilkins Affidavit, ¶ 11, 26.

Plaintiff responds that he is a solitary Wiccan and, therefore, it is necessary that he be

allowed to worship alone, in his cell.  He also claims that his prayers and spells are

ineffective without the proper oils.

Plaintiff fails to establish that the prison's restrictions result in the complete denial of

his spiritual experience.  In this case, the restrictions imposed by OP-030112 prohibiting in-

cell possession of oils, herbs and incense and the limitation on the types of oils authorized

for use, merely curtail certain ways of exercising Wiccan beliefs.  Alternative ways of

expressing his beliefs remain available to Plaintiff.  *See O'Lone v. Estate of Shabazz*, 482 U.S. at 352 (finding prison regulations did not deprive Muslim inmates of all forms of religious exercise but instead allowed them to "freely observe a number of their religious obligations").  Plaintiff admits he is able to engage, and in fact does engage, in communal group meditation and meetings.  He is also able to use oils in private at the chapel.

While the types of oils Plaintiff may use are restricted, Plaintiff nonetheless may purchase at least some oils to use as part of his worship.  In *Hammons*, the Tenth Circuit determined that a Muslim prisoner's denial of in-cell access to prayer oils for each of his five daily prayers curtailed a way of expressing beliefs but did not force the prisoner "to affirmatively take action that defiles his body."  *Hammons*, 348 F.3d at 1256.  The Court distinguished in this way its decision in *Beerheide v. Suthers*, *supra*, 286 F.3d at 1192, where the Colorado Department of Corrections "was effectively forcing Jewish inmates to affirmatively consume non-kosher food that they believed polluted their bodies, imperiled their souls, and was expressly forbidden by their religion."  *Hammons*, 348 F.3d at 1256 *citing Beerheide*, 286 F.3d at 1186-1187, 1192.  As the Tenth Circuit discussed in *Beerheide*, "there is a distinction between a religious practice which is a positive expression of belief and a religious commandment which the believer may not violate at peril of his soul."  *Beerheide*, 286 F.3d at 1192 (*citing Ward v. Walsh*, 1 F.3d 873, 878 (9th Cir. 1993)).  Here, Plaintiff's spiritual experience is diminished, but not completely denied.  *Hammons*, 348 F.3d at 1256.  Plaintiff has failed to demonstrate that without the additional types of oils he is wholly precluded from Wiccan religious experience.

In addition, Plaintiff has failed to establish that use of the additional oils is mandated by his religion.  *Compare Reese v. Coughlin*, No. 93 CIV. 4748 LAP, 1996 WL 374166 at *4 (S.D. N.Y. July 3, 1996) (unpublished op.) (noting that second *Turner* factor takes into account whether the restricted practice is mandated by prisoner's religion and finding prisoner failed to demonstrate use of tarot cards were essential to practice of Wicca); *see also Jackson v. Lewis*, No. 97-16723, 1998 WL 636757 (9th Cir. Sept. 11, 1998) (unpublished op.) (neither prisoner's affidavit nor texts provided by prisoner demonstrated tarot cards were central to Wiccan doctrine or required for its observance).[10]  Here, Plaintiff has failed to present any evidence from a religious or creedal authority that the additional oils requested are essential to the practice of Wicca, and it appears from the evidence that Plaintiff has alternative means of exercising his Wiccan religion within the limitations established by prison officials.[11]

---

[10]Plaintiff attached to one of his requests to staff a document from the website of the Church and School of Wicca entitled *Suggested Guidelines Governing Wicca in Correctional Facilities*. *See* Special Report, Attachment 7 at 8-9.  The *Guidelines* address daily meditation practices and make no reference to use of oils as part of, or essential to, that practice.  *See id*.

[11]As discussed, *infra*, the fact that additional oils may not be essential to the practice of Wicca does not defeat Plaintiff's RLUIPA claim.  However, the protections afforded by the First Amendment in a prison context are more limited than those extended by statute under RLUIPA.

### c.   Third Turner Factor: What impact will accommodation of the asserted constitutional right have on guards and other inmates, and on the allocation of prison resources, generally?

Addressing the third *Turner* factor, Defendants state: "Plaintiff seems to disregard the amount of resources necessary to accommodate his requests to have multiple oils, as well as herbs and incense in his cell." *See* Defendants' Motion [Doc. #41] at 15.  Defendants further state: "[w]hen additional burdens or requirements are added to a staff member's job without a corresponding increase in resources or a decrease in other requirements, the result is a diminishing of the quality and efficiency of their work, thereby making it easier for inmates to slip contraband into the prison or engage in misconduct, including criminal behavior." *See id., citing* Exhibit 3, Affidavit of Ken Klingler.  "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 482 U.S. at 90.

Mr. Klinger elaborates on the impact accommodating Plaintiff's request for in-cell possession of multiple oils, herbs and incense in his cell would have on prison resources and explains that demands on staff in administering oils and monitoring possession of the oils would put too heavy a strain on staff.  He also explains that volunteer staff are often used to administer religious programs and these persons are not trained in security awareness.  Not being able to use these volunteers or, alternatively, having to train these volunteers would further burden prison resources.  *See* Klingler Affidavit, ¶¶ 5, 7-8, 12.  Defendants' professional judgment that a burden would be imposed on prison staff is entitled to

deference.  *Compare Wardell*, 470 F.3d at 962 (increased supervision and inspection associated with lifting ban on third-party gifts to prisoners was sufficient to establish defendants' burden of proof as to third *Turner* factor).

> **d.**    **Fourth Turner Factor:   Are ready alternatives available for furthering the governmental interest available?**

The fourth *Turner* factor requires the Court to consider the presence or absence of ready alternatives that would fully accommodate the prisoner's religious exercise at *de minimis* costs to valid penological interests.  *Turner,* 482 U.S. at 90.  This factor is "not a 'least restrictive alternative' test" in that "prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint."  *Id*.  Rather, this factor weighs against the regulation if the prisoner can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests.

The evidence put forward by Defendants in support of the fourth *Turner* factor suggests that no ready alternatives exist that could be accomplished at a *de minimis* cost. Plaintiff, in response, points only to the fact that prison officials accommodated his request for a number of years without negative consequences.  However, accommodations to Plaintiff cannot be viewed in isolation.  Rather, accommodations must be viewed based on their availability to the inmate population as a whole.  It would be burdensome for prison officials to allow inmates in-cell possession of up to 17 different types of oils (even if

simultaneous possession were not required) while monitoring for their misuse.  Likewise, although to a lesser extent, the storage, maintenance and control of multiple varieties of oils would result in at least some increase in the administrative burden of prison staff members.

In sum, Defendants have established that the restrictions at issue have a valid and rational connection to legitimate penological interests.  On balance and applying appropriate deference to the professional judgment of prison officials, evidence relating to the additional *Turner* factors supports the conclusion that the prison regulations at issue do not violate Plaintiff's First Amendment rights.  Since the regulations pass scrutiny under the *Turner* and *O'Lone* standards, Plaintiff cannot establish that his First Amendment rights were violated.[12]

### C.   Plaintiff's RLUIPA Claims

"RLUIPA is the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens, consistent with [United States Supreme Court] precedents." *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005).[13] "[T]he inquiry under RLUIPA is more rigorous than under the First Amendment." *Lovelace v. Lee*, *supra*, 472 F.3d at 188  n.3.  Section 3 of RLUIPA provides that government action that "substantially burden[s]" religious exercise must be justified as the "least restrictive means"

---

[12]Because the Court finds Plaintiff has not established § 1983 liability premised on a First Amendment violation, the Court need not address Defendants' defense of lack of personal participation in the alleged constitutional violations.

[13]Congress enacted RLUIPA following the Supreme Court's decision in *City of Boerne v. Flores*, 521 U.S. 507 (1997), in which the Court declared the Religious Freedom Restoration Act (RFRA), *see* 42 U.S.C. § 2000bb, unconstitutional as applied to the states.

of furthering a "compelling governmental interest." 42 U.S.C. § 2000cc (a)(1), 2000cc-1(a).[14]  Section 3 applies only if the substantial burden "is imposed in a program or activity that receives Federal financial assistance" or the "substantial burden affects, or the removal of the substantial burden would affect" interstate or foreign commerce. 42 U.S.C. §2000cc-1(b).[15]

Under RLUIPA, plaintiff bears the burden of showing that the activity at issue is a religious exercise, and that defendants have substantially burdened that exercise. 42 U.S.C. § 2000cc-1. The burden then shifts to the government to show the government action is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-2(b). By its terms, RLUIPA is to be construed broadly to favor protection of religious exercise. 42 U.S.C. § 2000cc-3(g).

---

[14]Section 3 of RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Under RLUIPA, the term "government" includes "any . . . person acting under color of state law." 42 U.S.C. § 2000cc-5.

[15]Plaintiff has not alleged that OSR or its religious programs receive federal financial assistance. However, the Supreme Court in *Cutter* appears to have opined that the federal financial assistance requirement is met with respect to inmates housed in state prison systems. *Cutter* 544 U.S. at 715-716 n. 4 ("Every State . . . accepts federal funding for its prisons."). Because Defendants do not dispute the application of Section 3, the Court assumes, for purposes of summary judgment only, that this requirement is satisfied.

In the context of Plaintiff's RLUIPA claims, Defendants do not challenge Plaintiff's solitary practice or his request for additional oils as religious exercise. Nor do Defendants contend that these practices have not been substantially burdened. Therefore, this Court examines only whether Plaintiff has established a *prima facie* case.

### 1.   <u>Religious Exercise</u>

Plaintiff claims that OSR's policy restrictions on his ability to possess oils, herbs and incense in his cell and to purchase oils in addition to the five types allowed at OSR impose a substantial burden on his religious exercise as a solitary Wiccan. "Religious exercise" under RLUIPA includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Thus, while Plaintiff must make a *prima facie* showing that solitary practice and the use of additional oils are activities deserving of characterization as religious exercise, he need not show that these activities are mandated by his religion. *See Kikumura v. Hurley*, 242 F.3d 950, 960-961 (10th Cir. 2001) (stating that pursuant to the definition of "religious exercise" in 42 U.S.C. § 2000cc-5(7)(A) "a religious exercise need not be mandatory for it to be protected under RFRA"); *see also Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004) (addressing RLUIPA claim and stating: "the Supreme Court's express disapproval of any test that would require a court to divine the centrality of a religious belief does not relieve a complaining adherent of the burden of demonstrating the honesty and accuracy of his contention that the religious practice at issue is important to the free exercise of his religion.") (footnote omitted). The relevant inquiry is not what others regard as an important religious practice but what the plaintiff believes.

27

*See Cutter*, 544 U.S. at 725, n. 3 (noting that under RLUIPA, the truth of a belief is not questioned, the question is whether the belief is truly held). As one court has framed it, under RLUIPA "it matters not whether the inmate's religious belief is shared by ten or tens of millions. All that matters is whether the inmate is sincere in his or her own views." *Williams v. Bitner*, 359 F. Supp.2d 370, 376 (M.D. Pa. 2005).

Plaintiff has provided evidence from various texts about Wicca that solitary practice can be part of the "system" of Wiccan beliefs. *See* Plaintiff's Objection [Doc. #41], Attachment 5 at 3, 6. Plaintiff has also submitted evidence concerning the use of various oils in his religious practice. His own allegations, both in pleadings and as set forth in prison grievances, and the affidavit of another prisoner, also a Wiccan (*see* Plaintiff's Objection [Doc. #29, Attachment 10), indicate that the use of the different oils for prayers and spells is part of the Wiccan system of belief. *Compare Klein v. Crawford*, No. 3:05-CV-0463-RLH-RAM, 2007 WL 782170 at *6 (D. Nev. March 12, 2007) (unpublished op.) (finding genuine issue of material fact existed as to whether prison regulation substantially burdened prisoner's religious exercise as a solitary Wiccan due to lack of access to herbs based on prisoner's allegations that he considered the herbs to be necessary for his practice). As noted, Defendants have not challenged Plaintiff's contention that his practices constitute religious exercise. And, the relative significance of these practices for Wiccans is not a proper inquiry for this Court. *See, e.g., Adkins*, 393 F.3d at 570 (noting that Supreme Court precedent instructs "judges are ill-suited to resolve issues of theology in myriad faiths").

Although the inquiry as to what constitutes "religious exercise" could potentially be quite difficult in religions lacking well-defined, centralized or unified creedal systems, the broad definition set forth in RLUIPA makes such inquiry largely unnecessary. *See Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 663 (10th Cir. 2006) (RLUIPA "substantially modified and relaxed the definition of 'religious exercise'").[16] This is not a case where Plaintiff seeks to engage in an activity wholly isolated from religious context under the guise of religious exercise. *Compare Guzzi v. Thompson*, 470 F. Supp.2d 17, 25-26 (D. Mass. 2007) (prisoner failed to show keeping kosher is a protected religious activity for an Orthodox Catholic; keeping kosher itself is not a religion). Under RLUIPA's broad definition and construing the evidence in the light most favorable to Plaintiff for purposes of summary judgment, Plaintiff has established a prima facie case that his requested practices qualify as religious exercise. *Compare Kikumura*, 242 F.3d at 960-961 ("in light of the new definition of 'exercise of religion' adopted in RLUIPA," pastoral visits by Christian minister constituted religious exercise for prisoner who practiced a mix of Buddhism and Christianity even where prisoner did not claim the requested visits were required by his religious beliefs).

---

[16]According to literature provided by Plaintiff, there are many distinct "Traditions" of Wicca and "Wiccan practice can be described as ranging from 'traditional' to 'eclectic' with Traditions, covens and individuals fitting anywhere within that range." *See* Plaintiff's Objection [Doc. #49], Attachment 5 at 2.

In *Cutter*, petitioners, former and current inmates of the Ohio Department of Rehabilitation and Correction were adherents of "nonmainstream" religions including the Satanist, Wicca and Asatru religions. As the Supreme Court noted, "[f]or purposes of this litigation at its current stage, respondents have stipulated that petitioners are members of bona fide religions and that they are sincere in their beliefs." *Cutter*, 544 U.S. at 713.

## 2.   **Substantial Burden**

The term "substantial burden" is not defined in the statute and the Tenth Circuit Court

of Appeals has not yet defined the term in the context of a RLUIPA claim.[17] RLUIPA's

legislative history provides some guidance: "The term 'substantial burden' as used in this Act

is not intended to be given any broader interpretation than the Supreme Court's articulation

of the concept of substantial burden or religious exercise."  146 Cong. Rec. S7776-01 (July

27, 2000), 2000 WL 1079346.

In a recent decision, the Fourth Circuit Court of Appeals canvassed circuit decisions

articulating definitions of "substantial burden" and deemed the definitions to be "generally

consistent."  *Lovelace v. Lee,* 472 F.3d at 187 (listing decisions).  The Fourth Circuit adopted

the Supreme Court's definition of substantial burden as addressed in the related context of

the Free Exercise Clause: a substantial burden is one that "'put[s] substantial pressure on an

---

[17]In the context of a RFRA case, the Tenth Circuit Court of Appeals held that to be "substantial" a burden on religious exercise "must meaningfully curtail a prisoner's ability to express adherence to his or her faith" or must "deny a prisoner reasonable opportunities to engage in those activities that are fundamental to a prisoner's religion." *Werner v. McCotter*, 49 F.3d 1476, 1480 (10th Cir. 1995).  In a subsequent decision, *Thiry v. Carlson*, 78 F.3d 1491, 1495 (10th Cir. 1996), the Tenth Circuit held RFRA's "substantial burden" requirement should be interpreted based on the definition set forth in *Lyng v. Northwest Indian Cemetery Protective Ass'n.*, 485 U.S. 439 (1988).  In *Lyng*, the Supreme Court stated that the incidental effects of otherwise lawful government programs "which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs" do not constitute substantial burdens on the exercise of religion. *Id*. at 450-451.  In a recent RLUIPA case, the Tenth Circuit recognized the tension between the definitions of "substantial burden" articulated in *Werner* and *Lyng*  but did not articulate the standard for RLUIPA's substantial burden requirement.  *See Grace United Methodist Church*, 451 F.3d at 661-662. Significantly, however, the Tenth Circuit recognized that for purposes of RLUIPA, the substantial burden requirement must not make reference to "fundamental" religious activities as RLUIPA "substantially modified and relaxed the definition of 'religious exercise.'"  *Id.,* 451 F.3d at 663.

adherent to modify his behavior and to violate his beliefs.'" *Id*. at 187 (*quoting Thomas v. Review Board of Ind. Empl. Sec. Div.*, 450 U.S. 707, 718 (1981)).  This definition is consistent with the Supreme Court's definition of substantial burden in *Lyng*, as adopted by the Tenth Circuit in *Thiry*.  *See* discussion, *supra* footnote 17.  Therefore, the Court should use this definition of substantial burden in addressing Plaintiff's RLUIPA claim.[18]

It is undisputed that Plaintiff can make request to privately use oils, herbs and incense in the chapel.  *See* Special Report, Attachment 5, Wilkins Affidavit, ¶ 5.  To the extent Plaintiff might contend his requests would not be granted, at this juncture such a claim would be both speculative and unexhausted as, based on the record before the Court, Plaintiff has not submitted a request to staff requesting private time to use his oils or other religious items in the chapel.[19]  Therefore, Plaintiff has failed to make a prima facie showing that the prohibition of in-cell possession of oils, herbs and incense substantially burdens his practice as a solitary Wiccan.  Even had Plaintiff made such a showing, however, for the reasons set

---

[18]At least one district court within the Tenth Circuit has adopted a similar definition.  *See Hammons v. Jones*, No. 00-CV-0143-CVE-SAJ, 2006 WL 353448 at *3 (N.D. Okla. Feb. 14, 2006) (unpublished op.), *on remand from Hammons v. Saffle*, *supra*, 48 F.3d 1250.  The RLUIPA claims raised in the *Hammons* case remain pending in the United States District Court for the Northern District of Oklahoma.

[19]Plaintiff attempts to create a disputed issue of material fact relying on a request to staff submitted in October 2003 pursuant to which he requested the right to come to the chapel to use his oils.  *See* Plaintiff's Objection [Doc. #29], Attachment 6 at 3.  The request to staff was denied on grounds including the following: "[t]ime will not allow for individual worship time in the chapel since this yard (GP) has approx. 800 inmates (maximum sec.)."  *Id*.  Plaintiff, however, did not submit a formal grievance on this matter.  Moreover, Plaintiff did not make a subsequent request to use the chapel following the March 2005 decision at OSR to disallow in-cell possession of oils.  The October 2003 request to staff, therefore, is insufficient to create a disputed issue of material fact.

forth below, Defendants have shown that the regulation prohibiting in-cell possession of oils, herbs and incense is the least restrictive means towards furthering a compelling governmental interest.

Conversely, as to the restriction on the types of oils Plaintiff is permitted to use, Plaintiff has established a *prima facie* case of a substantial burden on religious exercise. Plaintiff contends his prayers and spells are an essential part of his Wiccan practice and are rendered ineffective, and therefore pointless, unless they are performed with the correct oils. As noted earlier, in a memorandum from the "Office of the Chaplain" at OSR, a prison official (presumably Defendant Atchley) states: "[s]ince the . . . types of oil have been limited inmate Levie's choices have been restrict [sic] to the extent that current guidelines prevent him from practicing certain tenants [sic] of his faith." *See* Plaintiff's Objection [Doc. #29], Attachment 8 at 2. *Compare Hammons v. Jones*, 2006 WL 353448 at *3 (DOC policy requiring Muslim prisoner to forego use of prayer oils during his daily prayers, thereby significantly modifying his religious behavior and violating his beliefs by affecting his daily prayers, constituted substantial burden on religious exercise).[20]  As noted, Defendants have

---

[20]As the Fourth Circuit cautioned in *Lovelace*, in assessing whether a religious exercise is substantially burdened, "courts must not judge the significance of the particular belief or practice in question." *Lovelace*, 472 F.3d at 187 n.2. *See also Adkins*, 393 F.3d at 570 ("We emphasize that no test for the presence of a 'substantial burden' in the RLUIPA context may require that the religious exercise that is claimed to be thus burdened be central to the adherent's religious belief system."); *Roy v. State of Arizona*, No. CV-03-2150-PHX-SRB, 2006 WL 120328 at *10 (D. Ariz. Jan. 13, 2006) (unpublished op.) ("In determining whether a prisoner's religious freedom is substantially burdened, . . . the question is not whether a particular practice is *required* by the prisoner's faith, but rather whether the practices in question *are important* to the votaries of the religion.") (internal quotations and citation omitted) (emphasis in original).

not challenged whether Plaintiff's religious practices involving the use of various oils have been substantially burdened.  Therefore, for purposes of the ODOC Defendants' summary judgment motion, Plaintiff has submitted prima facie evidence that the restriction on the types of oils permitted has placed substantial pressure on Plaintiff to modify his behavior and violate his beliefs.

### 3.    Compelling Governmental Interest

In moving for summary judgment on Plaintiff's RLUIPA claim, the ODOC Defendants focus on evidence that the prohibition on in-cell possession of oils, herbs and incense furthers compelling governmental interests of maintaining safety and security in the least restrictive means available.

RLUIPA returns the strict scrutiny test to prison litigation.  Congress replaced the legitimate penological interest standard articulated in *Turner* with the "compelling governmental interest" and "least restrictive means" tests codified at 42 U.S.C. § 2000cc-1(a).  *See also Cutter*, 544 U.S. at 717.  Yet, in *Cutter*, the Supreme Court emphasized that "context matters" in applying RLUIPA's compelling governmental interest standard.  *Cutter*, 544 U.S. at 723.  The Supreme Court instructed courts to apply this standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."  *Id*. at 723.  Of these concerns, security concerns deserve "particular sensitivity."  *Id*. at 722.  RLUIPA is not intended to

"elevate accommodation of religious observances over an institution's need to maintain order and safety."  *Id.*

In cases subsequent to *Cutter*, the lower courts have given due regard to the deference that must be given to the "professional judgment of experienced prison officials in crafting innovative prison policies to maintain security and order."  *Ragland v. Angelone*, 420 F. Supp.2d 507, 514 (W.D. Va. 2006) (citation omitted), *aff'd*, 193 Fed. Appx. 218 (4th Cir. Aug. 2, 2006) (unpublished op.), *cert. denied*, __ S.Ct. __, 2007 WL 879751 (March 26, 2007); *see also Hoevenaar v. Lazaroff*, 422 F.3d 366, 370-371 (6th Cir. 2005) (both RFRA and RLUIPA require courts to give deference to the experience and expertise and courts must guard against substituting their judgment for that of prison officials) *cert. denied*, 127 S.Ct. 187 (2006).

In moving for summary judgment on Plaintiff's RLUIPA claim, the ODOC Defendants largely rely upon the same evidence offered to defeat Plaintiff's First Amendment claim, despite the fact that RLUIPA contains a higher burden of proof.[21]  This evidence is sufficient to establish that OP-030112's prohibition of in-cell possession of religious oils, incense and herbs serves a compelling governmental interest through least restrictive means.  The evidence is not sufficient, however, to demonstrate the decision implemented at OSR limiting the types of religious oils allowed to the five approved scents serves a compelling governmental interest through least restrictive means.

---

[21]As noted earlier, Defendant Atchley does not address the merits of Plaintiff's RLUIPA claim but raises a number of defenses to the claim, as discussed *infra*.

To reiterate, Defendants submit the affidavit of Ken Klingler, a veteran correctional official, who states that oils and fragrances are used by inmates to mask the scent of drugs, making it difficult for drug dogs to detect the presence of drugs; to engage in sexual activities; to thwart security if prisoners rub oils on their bodies or put oils on the floors of their cells; and finally, to barter with inmates unable to purchase the oils.  *See* Klingler Affidavit, ¶ 3.  As explained by Mr. Klingler, all of these activities by inmates threaten security and create additional duties for staff in maintaining security.  For instance, bartering can lead to "inmate on inmate" violence or create security risks for correctional officers.  *Compare Acoolla v. Angelone*, No. 7:01-CV-01008, 2006 WL 938731 (W.D. Va. April 10, 2006) (unpublished op.) (restriction against prayer oil in segregation unit furthered compelling governmental interest in least restrictive means as oils has been used in the past "to frustrate officers in their efforts to restore order").  In addition, staff may be called upon to conduct more frequent cell searches to ensure oils are only in possession of those inmates authorized to use the oils.  *Compare Hoevenaar*, 422 F.3d at 369 (reversing district court for failing to give due deference to *inter alia*, prison official's judgment regarding problems with enforcement of regulations due to staff members' difficulties in determining who is exempted from the regulation and who is not).

According to Mr. Klingler, even the containers the oils come in present a security risk. The containers (small vials) are used by inmates to "conceal contraband drugs and other items in their anus."  *See id.*, ¶¶8-9.  The oils can also be used by inmates to mask the scent of drugs making the detection of drugs more difficult for trained drug dogs and their

handlers.  For all these reasons, allowing smaller quantities of oil is also unworkable.  The concerns of violence and bartering would not be alleviated. Therefore, requiring that oils be stored in the chapel is the least restrictive means towards further a compelling governmental interest.

Plaintiff has not come forward with substantial evidence that Defendants have exaggerated their response to security considerations by prohibiting in-cell possession of the oils, herbs and incense.  *See Hoevenaar*, 422 F.3d at 370 (once prison officials have provided expert testimony to justify security interests, courts must defer to their judgment unless the prisoner shows by substantial evidence that officials have exaggerated their response). Instead, Plaintiff relies on the fact that he was allowed the oils for a number of years without incident.  The Eighth Circuit has rejected requiring actual incidents of security violations to support the prison's policy or decision.  *See Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 989 (8th Cir.) ("We do not require evidence that racial violence has in fact occurred in the form of a riot  [to satisfy RLUIPA's higher standard of review], but we do require some evidence that MDOC's decision was the least restrictive means necessary to preserve its security interest."), *cert. denied*, 543 U.S. 991 (2004); *Ragland v. Angelone*, 420 F. Supp.2d at 515 (where affidavits from prison officials predict in specific terms the policy justification for a prison regulation, "a reviewing court generally need not also require prison officials to produce data proving that the predicted problems will occur or did occur before the policy was implemented").  As noted by the court in *Ragland*, where, as here, a prisoner has the ability to exercise his protected right in some fashion despite the challenged

36

regulation, this fact "weighs heavily in favor of a finding that the regulation is no more restrictive than warranted by prison needs." *Id.*, 420 F. Supp.2d at 515. Defendants are entitled to judgment as a matter of law on Plaintiff's RLUIPA claim challenging the prohibition on in-cell possession of oils, herbs and incense. The record establishes OP-030112's prohibition serves a compelling governmental interest through least restrictive means. Plaintiff has failed to come forward with evidence sufficient to create a genuine issue of material fact.

Defendants have failed, however, to demonstrate that the policy at OSR which limits the use of religious oils to the five types identified by the Interfaith Council serves a *compelling interest through least restrictive means*. The inventorying requirements may place an additional burden on prison staff or volunteers when multiple types of oils are allowed. Defendants make no effort to quantify that additional burden, however; therefore, avoiding the additional burden has not been shown to be a "compelling interest." But even if this interest is deemed compelling, Defendants have offered no evidence to show that their goal in limiting an administrative burden on staff is being achieved *through the least restrictive means*. The evidence shows that inmates could, if permitted, purchase oils from approved vendors in preformulated blends. *See* Special Report, Attachment 6 at 3. Defendants cannot simply assert that the current policy is the least restrictive way of achieving their compelling state interest. They must demonstrate this fact through affidavits or other evidence. Defendants have not done so, and therefore they have not shown they are entitled to summary judgment as to this aspect of Plaintiff's RLUIPA claim.

In sum, the ODOC Defendants are entitled to judgment as a matter of law in their favor on Plaintiff's RLUIPA claim challenging in-cell possession of oils, herbs and incense. Defendants, however, have failed to satisfy the summary judgment standard with respect to Plaintiff's RLUIPA claim challenging the restriction on the types of oils permitted to be used. The ODOC Defendants' motion should be denied as to this claim.

### 4.      Claim for Damages Against Atchley In His Individual Capacity

As set forth, Defendant Atchley did not address the merits of Plaintiff's RLUIPA claim. Instead, Defendant Atchley contends that RLUIPA prohibits claims against a state officer acting in his or her individual capacity and further, that claims for damages under RLUIPA are "precluded or uncertain." Accordingly, he seeks dismissal of Plaintiff's RLUIPA claim as brought against him in his individual capacity.[22]

The text of RLUIPA does not expressly address the remedies available except to provide that a prevailing party may "obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). The term "appropriate relief" is not defined in the Act. Thus, the statutory text neither expressly allows for damages nor expressly precludes damages. The Act defines "government" to include not only states and their departments and agencies but also an "official" of such entities and "*any other person acting under color of State law.*" 42 U.S.C. § 2000cc-5(4)(A)(iii) (emphasis added). The plain language of the statute, therefore, contemplates an action against a government official in his or her individual

---

[22]Although the same counsel represents Atchley and the ODOC Defendants, the ODOC Defendants have not raised this issue in their Motion.

capacity. The language mirrors the "under color of State law" requirement for actions brought pursuant to 42 U.S.C. § 1983. *See id.* (authorizing suits to redress deprivations of civil rights by persons acting "under color of any [state] statute, ordinance, regulation, custom, or usage."). And, for purposes of § 1983, the United States Supreme Court has made clear that "state officials sued in their individual capacities are 'persons.'" *Hafer v. Melo*, 502 U.S. 21, 23 (1991). Thus, arguably Congress intended to extend through RLUIPA, the availability of damages against state officers for actions taken in their official capacities under color of state law.

To date, none of the Circuit Courts of Appeal have addressed the issue of whether RLUIPA allows damages against state officials sued in their individual capacities. The federal district courts are split on the question. *See Agrawal v. Briley*, No. 02 C 6807, 2006 WL 3523750 (N.D. Ill, Dec. 6, 2006) (unpublished op.) (fully analyzing split of authority and concluding that "RLUIPA's remedial provision, creating a private cause of action for 'appropriate relief against a government,' authorizes individual-capacity claims for monetary damages). *See also Lovelace v. Lee*, 472 F.3d at 196 n. 7 (not reaching the question but noting lack of Circuit authority and recognizing developing split of authority in the district courts). In this regard, the Court notes that at least two district courts within the Tenth Circuit Court of Appeals have concluded no private right of action exists under RLUIPA against state officials sued in their individual capacities. *See Kay v. Friel*, No. 2:06-CV-23 TS, 2007 WL 295556 at *3 (D. Utah Jan. 26, 2007) (unpublished op.); *Boles v. Neet*, 402 F. Supp.2d 1237 (D. Colo. 2005). In addition, at least one other district court within the Tenth

Circuit has indicated agreement with these decisions, but has not decided the issue because the plaintiff sought only injunctive relief. *See Hammons v. Jones*, 2006 WL 353448 at * 1.

In *Kay,* the court cited the district court opinion in *Boles* for the proposition that RLUIPA's text allowing "appropriate relief against a government" permits cases against a governmental entity but not against an individual officer except in his or her official capacity. *See* Kay, 2006 WL 295556 at *3. The *Kay* court further cited *Boles* for the proposition that claims for damages are precluded or uncertain given RLUIPA's language authorizing "appropriate relief." An examination of *Boles*, however, reveals that these conclusions were reached without statutory analysis or consideration of the fact that RLUIPA defines "government" to include persons acting under color of state law.

Most recently, in *Daker v. Ferrero*, 475 F. Supp.2d 1325, 1347 (N.D. Ga. 2007), the court determined RLUIPA does not allow a claim for monetary damages against state actors in their individual capacities because to do so would render RLUIPA unconstitutional.[23]

---

[23]The *Daker* court held:

> In sum, construing Section 3 of RLUIPA to provide a remedy against prison officials in their individual capacities would unmoor RLUIPA from its firm grounding in the Spending Clause, *see Cutter*, 544 U.S. at 715, and engender debate about whether it regulates localized, noneconomic conduct that does not substantially affect interstate commerce. Such a construction may be in tension with the Supreme Court's modern understanding of the Commerce Clause . . . and thus raises serious constitutional concerns. Accordingly, to avoid such a serious constitutional question, the Court concludes that Section 3 of RLUIPA does not authorize money damages actions against prison officials in their individual capacities.

*Id*. at 1347.

Defendant Atchley has raised this legal issue in a wholly cursory fashion without briefing the significant and developing body of case authority, particularly that which is contrary to the position he advocates in this action. Therefore, the Court declines to further address the issue at this stage in the proceedings.[24]

## 5.     Lack of Subject Matter Jurisdiction

Defendant Atchley further seeks dismissal of Plaintiff's claims for injunctive relief on grounds of lack of subject matter jurisdiction. Relying upon his own affidavit, Defendant Atchley claims he is "an acting Unit Manager at OSR and has no control over any religious or policy issue at OSR or DOC." *See* Defendant Atchley's Reply [Doc. #37] at 6. Dismissal of Plaintiff's RLUIPA claim against Defendant Atchley on grounds of lack of subject matter jurisdiction should be denied. An official capacity claim is, in essence, a claim brought against the ODOC. Injunctive relief, if awarded, would necessarily be directed to the proper ODOC officials. But the change in Defendant's job assignment does not deprive the Court of subject matter jurisdiction over Plaintiff's claims against him.

## D.     Qualified Immunity

Defendant Atchley and the ODOC Defendants also raise a defense of qualified immunity. The qualified immunity defense applies only to Plaintiff's claims for monetary damages against the Defendants in their individual capacities. *See Elder v. Holloway*, 510

---

[24]As previously discussed, at the time Defendant Atchley moved for summary judgment, the Tenth Circuit interpreted 42 U.S.C. § 1997e(a) to require total exhaustion. It appears to the Court the Defendants largely relied upon that defense and that may explain the lack of more detailed presentation and development of the additional defenses raised.

U.S. 510, 512 (1994) ("The doctrine of qualified immunity shields public officials . . . from damage actions unless their conduct was unreasonable in light of clearly established law."). In proceeding to analysis of the defense of qualified immunity, the Court assumes, without deciding, that RLUIPA authorizes monetary damages against Defendants in their individual capacities.

Under the doctrine of qualified immunity, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once a defendant has raised qualified immunity as an affirmative defense, the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional [or statutory] right and (2) the constitutional [or statutory] right was clearly established at the time of the alleged conduct." *Reeves v. Churchich*, 484 F.3d 1244 (10th Cir. 2007) (citation omitted). The inquiry must be conducted in this order. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the court concludes no constitutional or statutory right has been violated, no further inquiry is necessary and the defendant is entitled to qualified immunity. *See id.*

In determining whether a plaintiff has made the requisite showings, the evidence is viewed in the light most favorable to the plaintiff. *See Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997). "Once the plaintiff clears this hurdle, the defendant assumes the normal summary judgment burden of establishing that no material facts that would defeat his

claim for qualified immunity remain in dispute." *Id.* (citation and internal quotations omited).

As analyzed above, the Court has determined Defendants should be granted summary judgment on Plaintiff's First Amendment claims and his RLUIPA claim as related to in-cell possession of oils, herbs and incense.   Because Defendants' conduct as related to these claims did not violate Plaintiff's constitutional or statutory rights, no further inquiry is necessary and Defendants are entitled to qualified immunity with respect to Plaintiff's request for monetary damages related to these claims.

Further analysis is required, however, as to Plaintiff's RLUIPA claim challenging Defendants' limitation on the types of oils he is permitted to purchase and use in his Wiccan practice. In support of the qualified immunity defense, Defendants state that their actions "were in accordance with DOC policy and did not violate any of Plaintiff's federally protected rights."   *See* ODOC Defendants' Motion [Doc. #41] at 18;  Defendant Atchley's Motion [Doc. #20] at 20.   The ODOC  Defendants further state: "Defendants are immune from damages because Plaintiff's **constitutional** rights were not violated, and even assuming *arguendo* that they were, the law on the use of prayer oils, herbs and incense in prison was not clearly established at the time."  *Id.* (bold emphasis added).[25]

----

[25]Defendants' inartful pleading makes it unclear whether the qualified immunity defense is raised as to both Plaintiff's First Amendment claims and his RLUIPA claims.  The Court has, nonetheless, construed the Defendants' motion to raise the defense as to all claims.  The Court assumes that the qualified immunity defense applies to claims brought pursuant to RLUIPA. *See, e.g.*, *Smith v. Haley*, 401 F.Supp.2d 1240, 1246-1247 (M.D. Ala. 2005) (noting that "a threshold issue is whether the doctrine of qualified immunity even applies to a RLUIPA claim" and concluding that it does).

Although Defendants have raised the defense of qualified immunity in most cursory fashion and without analysis of the law as applied to the facts of this case, the Tenth Circuit has instructed that by raising the defense, even if in cursory fashion, a defendant sufficiently apprises the plaintiff that the defense has been raised and this requires the court to address the merits of the defense. *See Ahmad v. Furlong*, 435 F.3d 1196 (10th Cir. 2006).[26]

As analyzed above, construing the evidence in the light most favorable to Plaintiff, he has established genuine issues of material fact as to whether Defendants violated his rights under RLUIPA by limiting the types of oils Plaintiff is permitted to use. On the record presented, the Court is unable to conclude that the limitation on the types of oils permitted constitutes the least restrictive means of furthering a compelling governmental interest. *See Eaton v. Meneley*, 379 F.3d 949, 955 (10th Cir. 2004) (qualified immunity requires inquiry into the legal question of whether the defendant's conduct, "as alleged by the plaintiffs and as construed in the light most favorable to them, would violate constitutional law").

---

[26]As previously noted, Defendant Atchley did not address the merits of Plaintiff's RLUIPA claim but sought dismissal on the ground that RLUIPA does not authorize claims for damages against state officers in their individual capacities. Therefore, it appears he asserts the defense of qualified immunity only as to this limited issue. The fact that the law is unsettled as to the remedial relief available under RLUIPA does not entitle Defendant Atchley to qualified immunity. It is the defendants' conduct in relation to the substantive statutory right that governs the qualified immunity analysis, not the particular remedy that may be available. *See, e.g., Agrawal v. Briley*, 2006 WL 3523750 at * 15 n. 14 (N.D. Ill. Dec. 6, 2006) ("If a defendant knew or reasonably should have known that his or her conduct violated a plaintiff's clearly established rights, qualified immunity is unavailable; the fact that the defendant was uncertain as to whether the violation would result in personal monetary liability, rather than some other adverse consequence, does not undo the violation and should not operate so as to restore the defendant's immunity."); *but see Marsh v. Granholm*, No. 2:05-CV-134, 2006 WL 2439760 at *14 (W.D. Mich. Aug. 22, 2006) (unpublished op.) (finding defendants entitled to qualified immunity on the issue of liability for damages in their individual capacity because that issue was unsettled in the circuit courts).

Therefore, whether Defendants are entitled to qualified immunity turns on whether the "infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable [prison official] would have known that his or her challenged conduct was illegal." *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007) (*citing Saucier v. Katz*, 533 U.S. at 201).

In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point or the clearly established weight of authority from other courts must establish that the law is as plaintiff maintains. *Id.* (citations omitted). "Although the very action in question does not have to have previously been held unlawful, in the light of pre-existing law the unlawfulness must be apparent." *Albright v. Rodriguez*, 51 F.3d 1531 (10th Cir. 1995) (citation and internal quotations omitted). Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The salient question is whether the state of the law at the time gave officials "fair warning" that their conduct violated federal constitutional, or in this case statutory, rights. *See id.*

RLUIPA was enacted in September 2000. The conduct at issue in this action occurred during 2005, more than four years later.

In *Hammons v. Saffle*, *supra*, a case decided in 2003, the Tenth Circuit addressed a First Amendment claim brought by a Muslim prisoner challenging the ODOC's restrictions on use of prayer oils. The ODOC policy at issue prohibited sales of Muslim oils in prison canteens and in-cell possession of such oils by inmates. Muslim prisoners did have access

to the prayer oils through volunteer chaplains and could use the oils during religious services. In conducting the qualified immunity analysis, the Tenth Circuit found Plaintiff failed to establish a violation of his First Amendment rights.   Although the Tenth Circuit did not, therefore, have to reach the second prong of the qualified immunity analysis, the Court nonetheless noted that "it was clearly established that [the prisoner] had the general right to the reasonable opportunity to exercise his religion." *Hammons,* 348 F.3d at 1257. *Hammons*, therefore, supports the conclusion that the right asserted by Plaintiff was clearly established.

Although RLUIPA imposes a higher burden on prison officials than that required by the First Amendment, the standard in RLUIPA is premised on long-standing Supreme Court precedent.  *See Cutter*, 544 U.S. at 714 (recognizing that RLUIPA gives religious exercise heightened protection from government-imposed burdens "consistent with this Court's precedents").  *See also Lovelace*, 472 F.3d at 198 n. 8 ("In its most basic protections, RLUIPA mimics the First Amendment. RLUIPA incorporates the "substantial burden" test used in First Amendment inquiries and expressly refers to the Free Exercise Clause in allocating its burden of proof."). Moreover, in *Kikumura v. Hurley*, the  Court addressed the government's burden under RFRA, RLUIPA's predecessor, and made clear that such a burden requires a different analysis than a "constitutional claim brought by a prisoner after *Turner*." *Kikumura*, 242 F.3d at 962.   As the Court recognized, the burden on the exercise of religion must be the least restrictive means of furthering a compelling governmental interest.  In this respect, *Kikumura* instructed Defendants about the contours of prisoners' statutory rights under RLUIPA.  The state of the law prior to Defendants' conduct in 2005

gave Defendants fair warning of Plaintiff's rights under RLUIPA, and therefore the law was clearly established.

Even if the law was clearly established, the Court must further determine whether Defendants' conduct was reasonable. Defendants contend their conduct was reasonable because it was in accordance with ODOC policy. Such justification, without more, is not enough. *See Boles*, 2007 WL 1502265 at *6 (prison official is not immune from liability "simply because he acted in accordance with prison regulations"). Additionally, as discussed previously, the ODOC policy itself contains no express restriction on the types of oils permitted. Therefore, Defendants cannot rely on the policy as a basis for establishing the reasonableness of their conduct.

Defendants are not entitled to qualified immunity as to Plaintiff's RLUIPA claim challenging Defendants' limitation on the types of oils he is permitted to purchase and use in his Wiccan practice.

## VI.  **Unnamed Defendant**

Plaintiff includes a claim against an unknown defendant, the Wiccan representative of the Interfaith Council. Plaintiff has failed to identify this unknown defendant or effect service of process within the 120-day time period required by Fed. R. Civ. P. 4(m). The Court is required to consider whether Plaintiff has shown good cause for failure to effect

timely service.  *See*  Fed. R. Civ. P. 4(m); *see also Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).[27]

Here a permissive extension of time is not warranted.  Service in this case does not involve the United States, nor is there any indication of an attempt by a defendant to avoid service.  Although a failure to extend the time for service of the unidentified defendant could present a statute of limitations problem, that possibility alone will not suffice to justify an extension to serve particularly given the recommended disposition of this case.  Therefore, Plaintiff's claims against the Unnamed Wiccan Representative should be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m).

## VII.   **Other Pending Motions**

Pending before the Court are two motions filed by Plaintiff: Motion for Restraining Order/Temporary Injunction [Doc. #51]; and Motion for Sanctions [Doc. #56].  Defendants have filed a response to the former motion.  *See* Defendants' Response to Plaintiff's Motion for Restraining Order [Doc. #53].

### A.   **Plaintiff's Motion for Restraining Order/Temporary Injunction**

Plaintiff's Motion for Restraining Order/Temporary Injunction, construed as a motion for a preliminary injunction, *see* Fed. R. Civ. P. 65(a), should be denied. Plaintiff alleges since the filing of his action, prison officials have transferred him to different housing units

---

[27]The Court in *Espinoza* specifically identified three factors pertinent to this issue: (1) whether the statute of limitations would run without the extension; (2) whether the case involves service on the United States; and (3) whether the defendant attempted to evade service. *Espinoza*, 52 F.3d at 842.

including special housing, general population and administrative segregation.  He also alleges

he is "threatened with transfer" from OSR.  Plaintiff alleges these acts are in retaliation for

having filed this lawsuit.  Plaintiff requests that the Court enjoin Warden Franklin, the

current warden at OSR, from retaliating against him or transferring him.

Warden Franklin is not a party to this lawsuit and, therefore, Plaintiff is not entitled

to injunctive relief against him.  To the extent Plaintiff seeks injunctive relief against the

named Defendants, his request should be denied.  To obtain preliminary injunctive relief

pursuant to Fed. R. Civ. P. 65, the moving party must show (1) irreparable injury absent

issuance of the injunction; (2) the threatened injury outweighs any damage the proposed

injunction may cause the opposing party; (3) the injunction, if issued, would not adversely

affect the public interest; and (4) a substantial likelihood of success on the merits.  *See, e.g.,*

*Oklahoma, ex. rel. Oklahoma Tax Com'n. v. International Registration*, 455 F.3d 1107,

1112-1113 (10th Cir. 2006).  Plaintiff has not made any of the required showings.

 The mere fact that Plaintiff has been transferred to different housing units, without

more, does not establish retaliatory motive.   And, Plaintiff offers nothing but mere

speculation regarding his potential transfer from OSR.  *Compare Johnson v. Saffle*, No. 99-

6148, 2000 WL 130726 at *2 (10th Cir. Feb. 4, 2000) (unpublished op.) (affirming the denial

of a temporary restraining order "because plaintiff had failed to establish a threat of

irreparable harm").  Forbidding prison officials from transferring Plaintiff based on the

speculative and conclusory allegations offered by Plaintiff would unduly interfere with

prison management and would be contrary to the public interest. *Turner v. Safley*, 482 U.S. 78 (1987).  For these reasons, Plaintiff's Motion should be denied.[28]

### B.    Plaintiff's Motion for Sanctions

Plaintiff alleges Defendants have violated Rule 11 of the Federal Rules of Civil Procedure.  Plaintiff claims the Special Report  omitted the documentation of his appeal of Grievance No. 05-005.  The Special Report includes the Request to Staff (Attachment 6 at 1-4), Grievance No. 05-005 (Attachment 6 at 6), the Grievance Response (Attachment 6 at 7) and the Director Designee's denial of the appeal (Attachment 6 at 8).  Plaintiff is correct that the Special Report does not include his appeal of Grievance No. 05-005.  Plaintiff included the appeal in his Objection [Doc. #40], Attachment 1 at 2-3.

Rule 11(b)(1) of the Federal Rules of Civil Procedure provides that any attorney or party, by presenting a pleading or motion to the court, certifies that "it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." A court may "impose an appropriate sanction" upon the party if the court determines that Rule 11(b) has been violated. Fed.R.Civ.P. 11(c).

---

[28]Moreover, Plaintiff filed the Complaint in this action in December 2005.  He did not move for injunctive relief on charges of retaliation until January 2007.  Plaintiff does not include in the Complaint a claim based on retaliation, nor has Plaintiff sought leave to amend the Complaint to bring such a claim.  As noted, Plaintiff seeks injunctive relief against an individual not a party to this lawsuit.  These factors constitute additional grounds for denying Plaintiff's motion.  *Compare Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (where prisoner's motion for preliminary injunctive relief was based on new assertions of mistreatment entirely different from claim raised and relief requested in lawsuit, prisoner was not entitled to injunctive relief).

According to Plaintiff, the incomplete Special Report has caused unnecessary delay and needless increase in the cost of litigation in violation of Rule 11(b)(1).

Plaintiff's Motion for Sanctions should be denied. The Special Report was prepared and submitted by a non-party to this case, Greg Brooks, Warden's Assistant, Oklahoma State Reformatory. Mr. Brooks submitted an affidavit stating that the facts set forth in the Special Report are true, complete and correct to the best of his knowledge, information and belief. *See* Special Report, Writer Affidavit. Warden Franklin, also a non-party to this case, submitted a similar affidavit. *See id.*, Unit Head Affidavit. There is no indication that these individuals purposefully omitted Plaintiff's grievance appeal from the record. Nor is there any indication that Defendants were attempting to engage in conduct that would result in unnecessary delay or increased cost of litigation. To the extent Plaintiff attempts to reurge satisfaction of 42 U.S.C. § 1997e(a)'s exhaustion requirement, the Court has thoroughly considered the evidence presented, including the grievance appeal which Plaintiff included in his Objections to Defendants' Motions. It is recommended that Plaintiff's Motion for Sanctions be denied.

## RECOMMENDATION

It is recommended that Defendant Atchley's Motion to Dismiss / Motion for Summary Judgment [Doc. #20] and the ODOC Defendants' Motion to Dismiss / Motion for Summary Judgment [Doc. #41] be granted in part and denied in part as follows:

As addressed in the Report and Recommendation filed January 17, 2007 [Doc. #50], the claim included in Count 3 of the Complaint challenging OP-030112's specifications

governing other religious accouterments should be dismissed for failure to satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a).

Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment.

As to Plaintiff's remaining First Amendment claims raised in Counts 1-3 of the Complaint, judgment as a matter of law should be entered in favor of Defendants and against Plaintiff.

As to Plaintiff's RLUIPA claims raised in Counts 1-3 of the Complaint challenging in-cell possession of oils, incense and herbs, judgment as a matter of law should be entered in favor of the ODOC Defendants and against Plaintiff.

As to Plaintiff's remaining RLUIPA claims raised in Counts 1-3 of the Complaint challenging the restriction on the types of religious oils Plaintiff is allowed to purchase, the ODOC Defendants' Motion for Summary Judgment should be denied.

Defendant Atchley did not move for summary judgment on the merits of Plaintiff's RLUIPA claims and for the reasons set forth above, the defenses to RLUIPA as raised by Defendant Atchley are insufficient to overcome Plaintiff's RLUIPA claims at this stage in the proceedings.  Plaintiff's RLUIPA claims as asserted against Defendant Atchley, therefore, should remain for resolution in further proceedings before the Court.

It is further recommended that Plaintiff's claims against Unnamed Wiccan Representative be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m), and that

Plaintiff's Motion for Restraining Order/Temporary Injunction [Doc. #51] and Plaintiff's Motion for Sanctions [Doc. #56] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by July __19th__, 2007. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __29th__ day of June, 2007.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE